In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Michele A. TJADER, Attorney at Law.

OFFICE OF LAWYER REGULATION, f/k/a Board of Attorneys Professional Responsibility, Complainant,

v.

Michele A. TJADER, Respondent.

Supreme Court

*No. 00–2887–D. Decided April 26, 2002.*

2002 WI 37

(Also reported in 643 N.W.2d 87.)

¶ 1. PER CURIAM. We review the recommendation of the referee that Attorney Michele A. Tjader receive a public reprimand for professional misconduct. In addition, the referee recommended that the court require Attorney Tjader to reimburse a client for interest on the delayed refund of an attorney fee, and to pay the costs of this proceeding.

¶ 2. We determine that a public reprimand is appropriate discipline for Attorney Tjader's misconduct. We also order Attorney Tjader to make the reimbursement to the client, K.H., as recommended by the referee and to pay the costs of this proceeding.

¶ 3. Attorney Tjader was admitted to practice law in Wisconsin in 1996. She has no prior disciplinary history. The misconduct described herein occurred in connection with Attorney Tjader's representation of a client in a prison/parole matter.

¶ 4. Following a disciplinary hearing the referee made the following findings of fact. In August 1998 K.H. contacted Attorney Tjader. She was seeking legal assistance on behalf of her fiancé, P.E., who was incarcerated. Attorney Tjader agreed to represent P.E. (hereinafter "client"). As the client was incarcerated during the period of representation, most of the legal discussions occurred between K.H. and Attorney Tjader. K.H. met with Attorney Tjader on October 1, 1998, fully explained the legal situation, and asked if Attorney Tjader could help her. K.H. explained that the client, who had a prior criminal record, was serving two consecutive prison sentences for two burglary charges. He had successfully completed the Department of Corrections' CHOICE program, an intensive alcohol and

drug treatment program. Apparently when the client entered the program, successful participants received a transfer to a minimum-security facility and/or a parole board review, thereby making the CHOICE program an "earned release" program. However, when the client completed the program it was no longer considered an "earned release" program such that successful participants no longer received an automatic transfer to minimum security.

¶ 5. K.H. wished to retain Attorney Tjader to effectuate the client's transfer to a minimum-security facility and/or to help him obtain parole. K.H. emphasized that it was important that the matter be resolved quickly.

¶ 6. Attorney Tjader represented that her law firm, then Kalal & Associates, had substantial experience with such matters. She opined that the client had a legitimate case, and agreed to represent the client. The next day Attorney Tjader contacted K.H. by telephone to confirm that she would represent the client, and stated that the appropriate legal procedure was to file a petition for writ of habeas corpus, which she claimed she was in the process of drafting. She further advised K.H. that "[a]ll of the lawyers in our defense team will work on your case, as needed, to assure that we provide you with the best possible defense." She established a fee arrangement with a "maximum" fee of $5000. K.H. paid an initial retainer of $1000 and was advised that she would be expected to make additional payments of $250 per month beginning November 1, 1998.

¶ 7. At the time of this conversation Attorney Tjader had not handled a case like this and had filed only one habeas corpus petition. Although she had a busy appellate practice with the firm of Kalal & Asso-

ciates, she spent most of her time doing legal research; this case was significantly different from the cases she usually handled in her practice. Prior to her meeting with K.H. Attorney Tjader had spoken briefly to her supervisor, Attorney Ralph Kalal, and they decided she could proceed with the filing of the habeas corpus petition. They had no substantive legal discussions regarding the matter. Attorney Tjader reviewed one reported case but did no additional legal research and consulted with no other attorneys about the proper procedure for handling such a matter. She acknowledged that at no point did she consider or research the possibility of filing a petition for writ of certiorari, or alternate procedural mechanisms for accomplishing the client's objective.

¶ 8. In a subsequent telephone conference on October 6, 1998, Attorney Tjader spoke directly with the client and confirmed that she would represent him and that she would file a habeas corpus petition on his behalf. She further confirmed with the client that he authorized Attorney Tjader to speak freely with K.H. about the case, such that no attorney-client privilege should apply to inhibit Attorney Tjader's communications with K.H.

¶ 9. By letter dated November 3, 1998, Attorney Tjader's paralegal advised K.H. that the habeas petition would be filed by "Thanksgiving time."

¶ 10. During October, November, and December of 1998, K.H. made repeated attempts to contact Attorney Tjader regarding the status of the petition. She was unable to reach Attorney Tjader directly and Attorney Tjader did not respond to any of the phone messages that K.H. left with Attorney Tjader's secretary and paralegal. Between late November and early December 1998 K.H. left at least six messages for Attorney Tjader

because she had not received a copy of the habeas corpus petition she had been told would be filed by Thanksgiving. K.H. eventually succeeded in reaching Attorney Tjader on December 9, 1998. During that telephone conversation K.H. told Attorney Tjader that she was disappointed that Attorney Tjader had not returned her calls. Attorney Tjader apparently indicated that she didn't return the calls because K.H. "always asked the same questions." Attorney Tjader claimed that she was in the process of finalizing the petition. Attorney Tjader made no notes of her initial conference with K.H. or of her telephone conversations with either K.H. or the client. She kept no time records.

¶ 11. Attorney Tjader later claimed that the client made a collect telephone call to her "sometime in November" to request that she "hold off" filing the petition. However, the referee discounted this claim, noting that Attorney Tjader had "no record of the charges for such a telephone call, [had] no contemporaneous notes of such a call, nor did she confirm to the client or to K.H. that she would stop work on the case." Both the client and K.H. deny that the client ever made this request.

¶ 12. On January 11, 1999, the client wrote directly to Attorney Tjader asking about several things, including the status of the petition. Attorney Tjader did not respond to his query regarding the petition. In the second week of January 1999 Attorney Tjader told K.H. that the petition had been filed. K.H. contacted the clerk of court and learned that no petition had been filed. When she confronted Attorney Tjader, Attorney Tjader claimed that the petition had been filed and promised to look into the matter herself and to send a copy to K.H. by Federal Express. Attorney Tjader failed to follow through and, in fact, never filed the petition.

¶ 13. On February 11, 1999, K.H. sent a certified letter to Attorney Tjader terminating Attorney Tjader's services and requesting a refund of the legal fees she had paid, as well as a return of the file materials she had given Attorney Tjader. She also wrote to Attorney Tjader's supervisor, Attorney Ralph Kalal, to inform him of the situation and repeated her request for a refund of the legal fees she had paid.

¶ 14. Attorney Kalal responded to K.H. in writing, claiming he could not discuss the matter with K.H. because of attorney client considerations. He refused to adjust the legal charges absent a letter from the client discharging the firm. Attorney Tjader approved this letter despite her knowledge that the client had clearly instructed her that attorney client privilege should not impede any discussions with K.H.

¶ 15. Eventually, after the disciplinary investigation commenced, Attorney Tjader repaid the full amount of the legal fees ($1750) paid by K.H. However, she failed to pay the 5% interest on the fee as requested by the Office of Lawyer Regulation (OLR).[1]

¶ 16. On October 19, 2000, the OLR commenced this disciplinary proceeding with the filing of a complaint against Attorney Tjader.[2] The complaint alleged that Attorney Tjader had engaged in five counts of professional misconduct.

---

[1] The referee was particularly troubled by this delay because Attorney Tjader was aware that K.H. would be adversely affected, both financially and emotionally, by the delay in receiving the refund.

[2] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from Board of Attorneys Professional Responsibility (BAPR) to the Office of

¶ 17. First, the OLR alleged that Attorney Tjader violated SCR 20:1.3[3] by failing to act with reasonable diligence in representing a client.

¶ 18. Second, the OLR alleged that Attorney Tjader violated SCR 20:1.4(a)[4] by failing to comply with reasonable requests for information.

¶ 19. Third, the OLR alleged that Attorney Tjader violated SCR 20:8.4(c)[5] by conduct involving dishonesty, deceit and misrepresentation.

¶ 20. Fourth, the OLR alleged that Attorney Tjader violated SCR 20:1.1[6] by acting without legal knowledge, thoroughness and preparation reasonably necessary for representation.

---

Lawyer Regulation (OLR) and the supreme court rules applicable to the lawyer regulation system were also revised. Most of the conduct giving rise to this complaint occurred prior to October 1, 2000. However, the references to supreme court rules will be to those currently in effect unless specifically noted.

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] SCR 20:8.4(c) provides that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

¶ 21. Fifth, the OLR alleged that Attorney Tjader violated SCR 20:1.16(d)[7] by failing to promptly return an advance payment of fees that had not been earned.

¶ 22. Attorney Tjader filed an answer. A referee was appointed and a hearing conducted on May 21 and 22, and June 15, 2001. At the conclusion of the hearing the parties submitted posthearing briefs and responsive briefs. The referee issued written findings of fact and conclusions of law, concluding, on the basis of the facts previously set forth herein, that Attorney Tjader violated SCR 20:1.3, SCR 20:1.4(a), SCR 20:8.4(c), SCR 20:1.1, and SCR 20:1.16(d). Attorney Tjader did not appeal the report and recommendation.

¶ 23. We adopt the referee's findings of fact and conclusions of law. Attorney Tjader's misconduct with respect to her handling of this matter is a serious failing. As discipline for the professional misconduct we impose a public reprimand and order Attorney Tjader to reimburse K.H. in the amount of $132.72 for interest on the delayed refund of attorney fees and to pay the costs of this proceeding, as recommended by the referee.

¶ 24. IT IS ORDERED that Attorney Michele A. Tjader be publicly reprimanded for her professional misconduct.

---

[7] SCR 20:1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶ 25. IT IS FURTHER ORDERED that within 30 days of the date of this order Attorney Michele A. Tjader shall reimburse K.H. in the amount of $132.72. If K.H. is not reimbursed within the time specified, absent a showing to this court of her inability to pay the reimbursement within that time, the license of Attorney Michele A. Tjader to practice law in Wisconsin shall be suspended until further order of the court.

¶ 26. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Michele A. Tjader shall pay to the Office of Lawyer Regulation the costs of this proceeding in the amount of $9396.28. If the costs are not paid within the time specified, and absent a showing to this court of her inability to pay the costs within that time, the license of Attorney Michele A. Tjader to practice law in Wisconsin shall be suspended until further order of the court.