IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John A. WARD, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant-Respondent,

v.

John A. WARD, Respondent-Appellant.

Supreme Court

*No. 03–0349–D. Oral argument November 3, 2004.—Decided February 8, 2005.*

**2005 WI 9**

(Also reported in 691 N.W.2d 689.)

1

For the respondent-appellant there were briefs by *Craig W. Nelson* and *Nelson, Connell & Conrad, S.C.,* Brookfield, and oral argument by *Craig W. Nelson.*

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy, Haas & Robinson, LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. We review the findings of fact, conclusions of law, and recommendations of referee Rose Marie Baron for sanctions, pursuant to SCR 22.17(1).[1] Attorney John A. Ward was found to have engaged in unprofessional conduct in the course of his practice of law in violation of the Rules of Professional Conduct. The referee recommended a public reprimand.

¶ 2. We approve the findings, conclusions and recommendations, and determine that Attorney Ward's misconduct warrants a public reprimand.

¶ 3. Attorney Ward was licensed to practice law in Wisconsin in 1985. He received a private reprimand for a violation of the Rules of Professional Conduct in 1999.

¶ 4. This case involves three counts: (1) failing to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3;[2] (2) charging an unreasonable fee in violation of SCR

---

[1] SCR 22.17(1) provides: "(1) Within 20 days after the filing of the referee's report, the director or the respondent may file with the supreme court an appeal from the referee's report."

[2] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

20:1.5(a);[3] and (3) failing upon termination of representation to refund any unearned portion of an advanced fee in violation of SCR 20:1.16(d).[4]

¶ 5. These counts involve Attorney Ward's representation, commencing in April 2001, of a woman from Kenosha in two matters. First, the client retained Attorney Ward to represent her in opposing a February

---

[3] SCR 20:1.5(a) provides:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

[4] SCR 20:1.16(d) provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

2001 motion filed in Milwaukee County by her former husband to establish visitation rights with their daughter. Second, the client retained Attorney Ward to commence a separate proceeding in Kenosha County to terminate her former husband's parental rights to the child. The client agreed to a "non-refundable minimum fee" of $10,000 to cover the first 50 hours of Attorney Ward's time with work beyond that to be billed at $200 per hour.

¶ 6. The client wanted Attorney Ward to immediately change the venue of the Milwaukee matter to Kenosha in order to cut down on his travel time and thereby reduce the hours he would have to spend on the case. She also believed that since she and the child lived in Kenosha, that was the appropriate county to litigate visitation. Finally, since the termination proceeding was going to be in Kenosha, she believed it was efficient to have all proceedings in that county.

¶ 7. There is a dispute whether Attorney Ward agreed with this strategy and consented to expeditiously attempt the venue change. In any event, Attorney Ward did not seek the venue change. At the initial May 2001 motion hearing before a Milwaukee County family court commissioner, he objected to venue but the commissioner advised him to raise it by written motion with the judge assigned to the case even assuming that could still be done in a timely fashion. Attorney Ward claims he had prepared a "rough draft" of a venue change motion before this hearing, but decided not to file it. The matter was adjourned to August 2001.

¶ 8. Attorney Ward filed the termination petition in Kenosha County later in May. A guardian ad litem was appointed for the child who soon advised Attorney Ward that she wanted to interview the child. However, the termination proceeding was adjourned in July by

7

the Kenosha court to await the outcome of the visitation dispute that was still pending in Milwaukee.

¶ 9. When the visitation matter returned to court in August, the commissioner held it open for another month, sent it to the circuit court for resolution, and in the interim gave the former husband temporary visitation, at least in part because the client may have misrepresented the husband's alleged lack of contact with the child over the years and had impeded his past visitation. Throughout this period, Attorney Ward never sought the change of venue.

¶ 10. Within a few days after the August hearing, the client terminated Attorney Ward's services. She apparently was unhappy that temporary visitation had been awarded and that venue had not changed which she believed might have avoided the unfavorable temporary result. Attorney Ward admits that by this time he too realized the matter had to be moved to Kenosha.

¶ 11. Attorney Ward cooperated in forwarding his file to the client's new attorney. However, he refused her demand to return the unearned portion of the $10,000. His services, for what amounted to a four-month period from April to August, allegedly totaled 36.4 hours. Thus he was refusing to return at least $2720 (13.6 hours x $200 per hour) in unearned fees.

¶ 12. This court adopts the referee's findings of fact unless clearly erroneous.[5] *In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d

[5] Attorney Ward requests a change to this standard, claiming that it is too deferential where a referee knows nothing about the area of law in question. He argues that a referee who is not a family court commissioner does not have the expertise to judge the actions of an attorney in a family matter. We reject this argument and decline to alter the existing standard.

380 (1993). No deference is granted to the referee's conclusions of law and they are reviewed de novo. *In re Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 310 N.W.2d 789 (1981). The court may impose whatever sanction it deems appropriate regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

## COUNT 1

¶ 13. The referee concluded there had been a violation of SCR 20:1.13 due to Attorney Ward's failure to file a written motion seeking a change of venue as directed by his client.

¶ 14. Attorney Ward disputed that he had ever agreed to seek the venue change. He claims it was "not true" that it was in his client's interest to have the matter moved to Kenosha; that it was "absolutely simply a ploy" to even preliminarily raise a change of venue because he was only "testing the waters" and trying to feel out the opposition; that he initially did not "care one way or the other" whether there was a change of venue; that he eventually decided to "table" the idea because he thought things were going well in Milwau-

---

Referees in attorney disciplinary matters do not typically require specialized knowledge to judge the conduct of the attorney. In the event a particular case allegedly requires more, referees are directed to *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 186 N.W.2d 258 (1971) (whether expert testimony is required under a given situation must be decided on a case-by-case basis); and *Cramer v. Theda Clark Memorial Hospital,* 45 Wis. 2d 147, 172 N.W.2d 427 (1969) (expert testimony is required to assist the adjudicator to understand complex issues).

kee; and that this was "absolutely the type of tactical decision" that he—and not his client—should make.

¶ 15. Attorney Ward argued that there were several reasons why not seeking a venue change was a sound tactical decision. First, he claimed that the former husband's attorney—who would not have represented the husband had the case been transferred to Kenosha—was not particularly "aggressive" and Kenosha was a more litigious venue. Second, he claimed that his client had been uncooperative with the Kenosha guardian ad litem by not letting the guardian interview the child. Thus Attorney Ward supposedly believed it was better to keep the visitation dispute in Milwaukee. Third, Attorney Ward claimed that the Milwaukee action was going well, at least until August when the former husband got temporary visitation, and thus there was no reason to move it.

¶ 16. On the other hand, the client testified that Attorney Ward "assured me that that [change of venue] would be done" and that she was "of the impression" that the Milwaukee visitation matter would ultimately be moved to Kenosha which was her "main concern."

¶ 17. The referee acknowledged that an attorney is not liable under the Rules of Professional Conduct for errors in professional judgment that are made in good faith and/or are in the best interest of the client. Thus she acknowledged that the failure to seek the venue change was not misconduct per se.

¶ 18. However, the referee rejected Attorney Ward's defense stating:

> Mr. Ward failed to file the requisite written motion seeking a change of venue from Milwaukee County to Kenosha County for approximately three months contrary to the direction and expectation of his client, his

assurances that he would do so, and the direction of the Milwaukee Court Commissioner . . . It is argued that there were good reasons for not pressing for a change in venue and there was no harm done to the [client] . . . I find that Mr. Ward's explanation of his strategy to keep the case out of Kenosha County and delay filing a change of venue motion until he was able to have a new Milwaukee guardian ad litem appointed (who presumably would provide a positive recommendation to the Kenosha guardian ad litem) is not credible.[6]

¶ 19. Mindful of the applicable standard for our review of findings of fact and that the referee was best situated to judge the credibility of the witnesses, we conclude that these findings are not clearly erroneous. Further, we agree that these facts support the subsequent conclusion of law that this rule of professional conduct was violated.

¶ 20. There was a direct factual dispute between the client's understanding of what would occur by way of a venue change and Attorney Ward's insistence that he never agreed to take such action and that it would have been a bad tactical decision under the circumstances. The referee was obviously best situated to

[6] Attorney Ward introduced the testimony of two Racine County attorneys and former guardians to support his handling of the venue matter. Both testified that the alleged hostility of the Kenosha termination guardian would have justified keeping the visitation dispute in Milwaukee. But the referee noted that neither had talked with the Kenosha guardian to determine if indeed he had been hostile to Attorney Ward's client. Thus the referee concluded that neither witness had any direct knowledge of the facts.

listen to the witnesses, assess their credibility, and resolve this factual dispute.[7]

## COUNTS 2 & 3

¶ 21. The referee concluded that Attorney Ward had charged an unreasonable fee in violation of SCR 20:1.5(a) and that a refund was in order under SCR 20:1.16(d). The Office of Lawyer Regulation (OLR) had not argued that the amount of the fee was unreasonable per se. Rather, it objected to it being nonrefundable under circumstances where the amount was not reasonable and here $10,000 was unreasonable in relation to the amount of time Attorney Ward put in on the case and the result he achieved.[8]

¶ 22. The referee stated that Attorney Ward turned a "simple" visitation/termination dispute into a "complex legal endeavor" by allegedly spending over 36 hours to make a few appearances before a commissioner

---

[7] Attorney Ward was not charged with a violation of SCR 20:1.2(a) and (c) which require a lawyer to abide by a client's decisions concerning the objectives of representation unless the client consents after consultation to a change. Neither was he charged under SCR 20:1.4(a) and (b) which require the lawyer to keep the client reasonably informed about the status of a matter and to explain the matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. But it is apparent that if Attorney Ward had thoroughly discussed his alleged tactical designs with regard to venue and obtained her consent to delay the matter, the problems in this case might not have resulted.

[8] Attorney Ward's two witnesses had testified that a $10,000 nonrefundable fee was high but not unreasonable under the circumstances. But the referee considered this testimony to be "far too general to be of significant import" because, in part, both of the experts were based in Racine County.

12

and never filing any written motions. Further, the referee found that much of the research Attorney Ward claimed he performed in this case—such as a memoranda after the second commissioner hearing—was at a time when he should have anticipated his imminent discharge as counsel. The referee also termed the research "of questionable necessity, not on point, and of no value." The referee observed that Attorney Ward had no documents in the file that reflected the 26.3 hours of research he claimed he performed in this case. For example, there were no bills for electronic legal services, no computer files, no copies of a daily time record for the days for which he billed, or any contemporaneous notes. The referee acknowledged that it was evident Attorney Ward did some research, but found that the alleged total of over 36 hours was "unreliable."

¶ 23. The referee further found that Attorney Ward had not performed in an acceptable professional fashion in this case:

> I do not believe that Mr. Ward exhibited the level of professionalism in his performance representing [the client] before the Family Court Commissioner that would be expected from someone with his many years of legal experience. Further, I find his apparent need to expend excessive hours on researching a relatively straightforward topic surprising given his professed ability as a family law practitioner. The record reflects that successor counsel, with far less experience than Mr. Ward, was able to bring the change of venue matter as well as the TPR to a speedy and successful conclusion without reliance on the subject matter jurisdiction issue that consumed so much of Mr. Ward's time. Thus, while acknowledging Mr. Ward's reputation among fellow lawyers, I must nonetheless find that his ability in this case falls below reasonable expectations.

¶ 24. As for the nonrefundability factor, the referee acknowledged that nonrefundable fees are not a per se violation but are typically permissible, in part, only where the nature of the reputation precludes the lawyer from accepting other representation, or the lawyer's experience, reputation, and skill may result in immediate benefit to the client without regard to whether extensive labor is performed. *See* Wisconsin Ethics Opinion E-93-4. Based on this, the referee concluded the nonrefundable aspect of this fee was unreasonable because Attorney Ward was not precluded from taking on other representation due to his representation of this client, and his experience, reputation, and skill were not at such a level as to give this client an immediate benefit.

¶ 25. The referee ultimately found that Attorney Ward performed 13.8 hours of legitimate research for a total time expenditure of 23.9 hours which at a rate of $200 per hour, amounted to $4780. The referee concluded that reasonable restitution to this client would thus be $5220.

¶ 26. The referee's findings with respect to this nonrefundable fee agreement are not clearly erroneous. The record does not support Attorney Ward's contention that the nature of the representation of this client precluded him from accepting other representation or that his experience, reputation and skill could result in immediate benefit to the client without regard to whether extensive labor was performed. Indeed, there certainly was no immediate benefit to this client.

██

¶ 27. Further, the referee's findings with respect to the amount to be refunded this client are not clearly erroneous. It obviously was difficult to create exactly what Attorney Ward legitimately did in this case, due in

significant part to his lack of proper documentation. Again, the referee had the benefit of listening to the witnesses, examining any relevant documentation that did exist, and assessing Attorney Ward's assertions in his defense.[9]

## SANCTION

¶ 28. The referee recommended the public reprimand which the OLR sought. She agreed with its characterization of Attorney Ward as selfish and having intentionally misstated the amount of time he spent on this case. The referee reviewed several cases where public and private reprimands were issued but concluded they were not entirely comparable because of factual differences. However, the referee indicated that since there were three counts of misconduct, and particularly since Attorney Ward already has a private reprimand on his disciplinary record, a public reprimand was appropriate.

¶ 29. As previously noted, the referee also recommended restitution of $5220 to be awarded the client,

---

[9] Attorney Ward contends he should not have to refund anything to his client because she was unsuccessful in a prior small claims action that sought a refund. However, claim or issue preclusion does not apply in this situation because the OLR was not a party to this client's action. Further the court specifically declined to render any opinion as to whether Attorney Ward breached the fee agreement or otherwise performed below the required threshold (it resolved the case against the client solely because she had not presented expert testimony). Finally, claims of attorney misconduct in this regard come before a referee with eventual review by this court, and this process cannot be short-circuited by an unsuccessful pro se action.

plus interest at the statutory rate from the date Attorney Ward's services were terminated.

¶ 30. We adopt the referee's recommendation and therefore decide that a public reprimand is appropriate. Although there are indeed factual differences with similar prior cases, several are instructive. *In Disciplinary Proceedings Against Tjader,* 2002 WI 37, 252 Wis. 2d 94, 643 N.W.2d 87, resulted in a public reprimand for failure to act with reasonable diligence and return an unearned fee. Further, *In Disciplinary Proceedings Against Koehn,* 208 Wis. 2d 128, 559 N.W.2d 908 (1997), resulted in a public reprimand for failure to provide competent representation, failing to promptly file necessary documents, and failing to respond to a request for information from the client, under circumstances where the attorney had a prior disciplinary record. These, coupled with Attorney Ward's disciplinary record, indicate that a public reprimand is appropriate.[10]

¶ 31. IT IS ORDERED that Attorney John A. Ward is publicly reprimanded.

¶ 32. IT IS FURTHER ORDERED that Attorney Ward's motion to dismiss the OLR complaint, objection to costs, motion to disallow or reduce costs, motion to hold in abeyance, and motion to supplement are denied.

---

[10] We note that in the course of Attorney Ward's vigorous defense he advanced several contentions that are overzealous. To claim that "the referee's findings are result oriented, stemming from her obvious desire to rule for the OLR on every issue," that she "did not understand the evidence on a fairly basic level," and that she "made up" evidence, is unwarranted. Although they did not affect the outcome of this case, Attorney Ward's personal attacks on the integrity of the referee were unnecessarily contentious and inappropriate.

¶ 33. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Ward shall pay: (1) the costs of this proceeding to the OLR in the amount of $18,097.26; and (2) his former client $5220 plus interest at the statutory rate from the date his representation was terminated. If these costs are not paid within the time specified, and absent a showing to this court of an inability to pay those costs within that time, the license of Attorney Ward to practice law shall be suspended indefinitely.