In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST, Dennis J. RYAN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Dennis J. RYAN, Respondent.

Supreme Court

*No. 2007AP2629–D. Decided May 29, 2009.*

2009 WI 39

(Also reported in 766 N.W.2d 186.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Attorney Judith Sperling-Newton. Based on a comprehensive stipulation between the Office of Lawyer Regulation (OLR) and Attorney Dennis J. Ryan, the referee found that Attorney Ryan

had committed six violations of the Rules of Professional Conduct for Attorneys. As jointly requested in the stipulation, the referee recommended that Attorney Ryan be publicly reprimanded for his professional misconduct and that he be ordered to pay $8,000 in restitution to a former client's parent, who had paid Attorney Ryan's requested fee. The referee went beyond the stipulation in recommending that Attorney Ryan be required to provide a detailed billing to another former client, G.S., and that the OLR supervise Attorney Ryan's practice for a period of two years. Neither party has appealed from the referee's report and recommendation. Thus, our review proceeds under SCR 22.17(2).[1]

¶ 2.   Having independently considered the matter, we determine that a public reprimand is an appropriate level of discipline for Attorney Ryan's misconduct. We agree that Attorney Ryan should be required to pay the recommended restitution and to provide a detailed billing to G.S. While we agree with the referee's recommendation that the OLR should supervise Attorney Ryan for a period of two years, we modify and clarify the scope of that supervision. Finally, we determine that Attorney Ryan should be required to pay the full costs of this disciplinary proceeding, which were $2,530.18 as of November 25, 2008.

¶ 3.   Attorney Ryan was admitted to the practice of law in Wisconsin in September 1995. He practices as a sole practitioner in Madison. He has not previously been the subject of professional discipline.

---

[1] SCR 22.17(2) provides as follows:   Review; appeal.

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶ 4. This disciplinary proceeding involves two separate grievances, one involving Attorney Ryan's representation of M.H. and one involving the representation of G.S. Both representations involved defending individuals charged with or convicted of a crime.

¶ 5. The facts set forth below are taken from the referee's report and recommendation, which in turn relied on the parties' stipulation. We note that the stipulation, entered after the filing of an amended complaint and prior to a scheduled disciplinary hearing, expressly provided that Attorney Ryan understood the misconduct allegations against him, that he understood the ramifications of the stipulated level of discipline, that he understood his right to contest the OLR's allegations, that he was entering the stipulation knowingly and voluntarily, that he was admitting the misconduct charged by the OLR, and that he was assenting to the level of discipline sought by the OLR.

¶ 6. The first five counts of misconduct involve Attorney Ryan's representation of M.H., who was himself an attorney. In April 2004 M.H. was found guilty of four separate criminal offenses in a federal prosecution. While M.H. was awaiting sentencing, the federal district court imposed "Special Administrative Measures" ("SAMs") on M.H.'s confinement. The SAMs, among other things, restricted M.H.'s ability to communicate with persons outside the facility where he was being held.

¶ 7. In early 2005 Attorney Ryan initiated contact by telephone with M.H.'s father. This telephone contact was not solicited by M.H., his parents, or anyone acting on their behalf. At the time of this telephone communication, Attorney Ryan had no existing relationship with M.H. or with any member of M.H.'s family. During the initial telephone conversation, Attorney Ryan told

200

M.H.'s father that he had gone to the same law school as M.H. and was available and willing to provide legal representation to M.H. and/or M.H.'s family members. As a result of additional contacts between Attorney Ryan and M.H.'s parents, in late March or early April 2005 M.H. agreed to retain Attorney Ryan.

¶ 8. On April 6, 2005, the federal district court sentenced M.H. to a total of 480 months of imprisonment. Apparently on the day of sentencing, M.H. filed a pro se notice of appeal from his convictions. On April 7, 2005, M.H. sent a letter to Attorney Ryan, requesting him to assist M.H. with his appeal and with the removal of the SAMs.

¶ 9. At some point over the next several weeks, Attorney Ryan told M.H.'s parents that he would represent M.H. and would require a fee of $10,000. M.H.'s father subsequently paid that amount to Attorney Ryan. Attorney Ryan has stated that he considered the $10,000 to be a flat fee, but he never prepared a written fee agreement regarding his representation of M.H. or the nature of the fee.

¶ 10. Attorney Ryan did very little to further M.H.'s interests. He did not visit M.H. in prison. Although Attorney Ryan did speak with M.H. by telephone, he did so on just one occasion, July 15, 2005. On that same date, M.H.'s mother sent an e-mail to Attorney Ryan stating she wished to terminate the relationship, requesting an accounting of his time, and demanding a refund of the $10,000 that M.H.'s father had sent to Attorney Ryan. On September 19, 2005, M.H. himself sent a letter to Attorney Ryan, in which he stated that Attorney Ryan's assistance was no longer necessary since M.H. was preparing his own appellate briefs. M.H.'s letter further requested that Attorney Ryan refund $8,000 to his father. M.H. sent another letter on

December 5, 2005, again asking for a refund of $8,000. Attorney Ryan refused, however, to refund any portion of the $10,000.

¶ 11.  During the few months that Attorney Ryan was engaged to represent M.H., he did not enter an appearance on M.H.'s behalf in any federal court. He did not prepare any briefs or pleadings on M.H.'s behalf and did not even provide a written analysis of M.H.'s appeal. It appears that the extent of Attorney Ryan's efforts on M.H.'s behalf was to conduct some legal research regarding the SAMs imposed on M.H., although he did not take any formal action seeking to remove or even modify them.

¶ 12.  On the basis of these facts, Attorney Ryan stipulated that he had committed five counts of professional misconduct. In particular, the referee found that by making an unsolicited telephone call to M.H.'s father, Attorney Ryan had impermissibly initiated personal contact with a prospective client's family member, in violation of former SCR 20:7.3(c).[2] Second, the referee concluded that Attorney Ryan had failed to act with reasonable diligence, thereby violating SCR

---

[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because most of the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the Wisconsin Supreme Court Rules will be to those in effect prior to July 1, 2007.

Former SCR 20:7.3(c) provided:

A lawyer shall not initiate personal contact, including telephone contact, with a prospective client for the purpose of obtain-

20:1.3,[3] by failing to advance M.H.'s interests either on his appeal or in his challenge to the SAMs imposed on his confinement. Next, the referee found that Attorney Ryan's demand for a $10,000 flat fee without advancing M.H.'s interests had constituted the charging of an excessive fee, in violation of former SCR 20:1.5(a).[4] In addition, Attorney Ryan's failure to explain the nature

ing professional employment except in the following circumstances and subject to the requirements of Rule 7.1 and paragraph (d):

(1) If the prospective client is a close friend, relative or former client, or one whom the lawyer reasonably believes to be a client.

(2) Under the auspices of a public or charitable legal services organization.

(3) Under the auspices of a bona fide political, social, civic, fraternal, employee or trade organization whose purposes include but are not limited to providing or recommending legal services, if the legal services are related to the principal purposes of the organization.

[3] SCR 20:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Former SCR 20:1.5(a) provided:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

of his proposed fee and the legal services that he would render in exchange for that fee violated former SCR 20:1.5(b).[5] Finally, the referee determined that by failing to refund any portion of the $10,000 fee after his representation had been terminated, when he had not earned a fee of that amount, Attorney Ryan had violated former SCR 20:1.16(d).[6]

¶ 13. The second grievance against Attorney Ryan was filed by G.S., who paid $1,500 to Attorney Ryan for legal representation in two pending criminal cases. As was the case in the representation of M.H., Attorney Ryan did not prepare any written fee agreement.

¶ 14. Attorney Ryan did represent G.S. at a jury trial in the first case. After being found guilty at that trial, G.S. then pled no contest to the misdemeanor charges in the other case.

---

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[5] Former SCR 20:1.5(b) stated, "When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

[6] Former SCR 20:1.16(d) provided as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶ 15. G.S. subsequently terminated Attorney Ryan's representation and requested a detailed billing of the work Attorney Ryan had performed on his cases. Attorney Ryan did not provide the billing or otherwise respond to G.S.'s request.

■

¶ 16. With respect to this grievance, Attorney Ryan stipulated, and the referee found, that the failure to respond to G.S.'s request for a detailed billing of Attorney Ryan's work had violated SCR 20:1.5(b)(3).[7]

¶ 17. Based on these findings of misconduct, the referee recommended that Attorney Ryan be publicly reprimanded, as requested in the stipulation.[8] She

---

[7] SCR 20:1.5(b)(3) (effective July 1, 2007) states that a lawyer "shall promptly respond to a client's request for information concerning fees and expenses."

[8] After learning of the stipulation between the OLR and Attorney Ryan, G.S. filed a motion, based upon SCR 22.09(2), seeking an opportunity to submit a response to the stipulation. The motion is denied. Although SCR 22.09(2) does allow a grievant to submit a written response to the director of the OLR when a stipulation for a consensual reprimand is reached without the initiation of a full disciplinary proceeding before this court, that rule does not apply to the present case, where the stipulation was reached after the initiation of a formal disciplinary proceeding and after a referee had been appointed. Under the current version of the rules, a grievant is not considered a party to a disciplinary proceeding before this court and does not have standing to file independent motions and submissions, absent leave of this court to intervene. SCR 21.12 ("A grievant is not a party to a misconduct or medical incapacity proceeding brought by the office of lawyer regulation."). In a disciplinary proceeding, the OLR represents the interests not only of the grievant, but of the general public and the judicial system of this state. The motion filed by G.S., however, raises an important question as to whether there should be some proce-

stated that she had considered the seriousness of the misconduct, the need to impress that seriousness upon Attorney Ryan, the need to protect the public and the courts from repetition of the misconduct by Attorney Ryan, and the need to deter other attorneys from similar misconduct. She also stated that no aggravating factors had been brought to her attention. On the other side of the equation, she noted as mitigating factors Attorney Ryan's lack of prior discipline and his interest in making restitution.

¶ 18. The referee also recommended that Attorney Ryan pay restitution to M.H.'s father in the amount of $8,000 by July 1, 2009. This restitution payment was also part of the parties' stipulation.

¶ 19. In addition to the provisions of the stipulation, the referee recommended that this court impose two additional requirements on Attorney Ryan. The first requirement was that Attorney Ryan provide the detailed billing statement to G.S. that he had requested around the time he had terminated Attorney Ryan's services.

¶ 20. The second requirement relates to the OLR's supervision of Attorney Ryan. Prior to issuing her report and recommendation, the referee conducted a telephone conference with Attorney Ryan and the OLR's retained counsel. At that time the referee asked Attorney Ryan to prepare a plan to avoid similar

---

dure in the rules whereby grievants may comment on stipulations between the OLR and a respondent attorney that are executed after a disciplinary proceeding has been initiated. The court appreciates G.S.'s interest in this matter and will raise the issue of a potential comment procedure for grievants in such situations with the OLR staff and the board of administrative oversight.

problems in the future. She also asked the OLR whether it would be willing to supervise Attorney Ryan's practice.

¶ 21. Attorney Ryan responded to the referee's request by means of an August 15, 2008, e-mail message, which the referee has attached to her report and has made part of the record. Attached to the message was a sample fee agreement letter that Attorney Ryan said he had begun to use. In the e-mail Attorney Ryan gave the impression that he had previously not been particularly concerned about setting forth the financial terms of a representation and that he had begun using a written fee agreement in order to protect himself when a client became dissatisfied with the outcome Attorney Ryan could achieve. He stated, "The necessity, as with any agreement or contract, comes in safeguarding yourself when dissatisfaction erupts." Attorney Ryan also stated that, given the fact that he had "worked alone and in the hardest areas of criminal law for a dozen years," he saw no point in being subjected to any form of supervision by the OLR. His e-mail concluded with the following passage:

> I apologize if the tone of this email is less than one who is suitably meek and contrite. In spite of all the second guessing and alarms, I know the work I do each day is beyond the reach of most of my peers. That, sadly, is the unseen part of my practice and myself.

¶ 22. The OLR submitted a response, in which, without giving an advisory opinion on the sample fee agreement, it offered some general cautions about the use of "non-refundable" advance fees. The OLR also indicated that it would be willing to supervise Attorney Ryan's practice, if directed to do so by this court.

207

¶ 23. Based on these interactions, the referee included a second additional recommendation. Specifically, the referee recommended that the OLR supervise Attorney Ryan for a period of two years in the following ways:

    (1) Attorney Ryan must promptly submit to OLR all fee agreement letters and all trust account or client records that the OLR requests; and

    (2) The OLR should "ensure that respondent [Attorney Ryan] is at all times in compliance with the Supreme Court Rules."

¶ 24. Our review of a referee's report and recommendation occurs under the following standards of review. We affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 25. In the present case, we determine that the referee's findings of fact are not clearly erroneous, and we adopt them. We also adopt the referee's conclusions of law that Attorney Ryan committed each of the six counts of professional misconduct alleged by the OLR.

¶ 26. We now turn to the referee's recommendations regarding the appropriate level of discipline, the

208

obligations to Attorney Ryan's prior clients, and the supervision of Attorney Ryan's practice by the OLR. With respect to the level of discipline, we conclude that a public reprimand is appropriate in these circumstances. We note that we have imposed a public reprimand on an attorney with a prior private reprimand who had charged an unreasonable fee, had failed to refund an unearned portion of an advance fee, and had failed to act with reasonable diligence. *In re Disciplinary Proceedings Against Ward,* 2005 WI 9, 278 Wis. 2d 1, 691 N.W.2d 689. In addition, although in the context of a reciprocal discipline matter, we have also imposed a public reprimand on an attorney who had made uninvited solicitations for legal work to an individual whose physical or mental state was such that the person could not exercise professional judgment in employing a lawyer. *In re Disciplinary Proceedings Against Whiting,* 2003 WI 124, 265 Wis. 2d 407, 667 N.W.2d 355 (imposing discipline reciprocal to that imposed in Illinois under SCR 22.22). While these cases may not contain the exact same facts as Attorney Ryan's situation, they provide support for imposing a public reprimand in this case, especially in light of the fact that Attorney Ryan has not previously been the subject of professional discipline and has stipulated to his professional misconduct.

¶ 27.  There are no disputes or questions about the referee's recommendations that Attorney Ryan pay $8,000 in restitution to M.H.'s father and that he provide detailed billing information to G.S. The restitution payment to M.H.'s father was expressly included in the parties' stipulation. Although the billing information requirement was not explicitly mentioned, Attorney Ryan did admit that he had violated SCR 20:1.5(b)(3) by not providing billing information to G.S.

when requested to do so. Moreover, Attorney Ryan has not appealed from this portion of the referee's report. We determine that both of these requirements are appropriate in this case.

¶ 28.  We next consider the referee's recommendation that the OLR should supervise Attorney Ryan's practice. The second portion of the referee's recommendation in this regard asks us to order the OLR to "ensure that respondent [Attorney Ryan] is at all times in compliance with the Supreme Court Rules." We think this is overly broad and would impose an unreasonable burden on the OLR. In order to "ensure" compliance with all ethical rules at all times, the OLR would almost need to station a representative in Attorney Ryan's office to monitor his conduct.

¶ 29.  Moreover, several of the primary shortcomings identified in this disciplinary proceeding involve the specific issue of fees, including the establishment of a reasonable fee, the communication of that fee to the client, the calculation of that fee and the assessment of its reasonableness, and the return of unearned fees. We therefore conclude that the OLR's supervision should relate to that specific part of Attorney Ryan's practice.

¶ 30.  Although Attorney Ryan has not appealed from this portion of the referee's recommendation, we note that his August 15, 2008, e-mail to the referee did argue against any supervision by the OLR. Attorney Ryan contended that since privately retained clients are a small portion of his practice and since he has "worked alone and in the hardest areas of criminal defense for a dozen years now," there is no need for any supervision of any part of his practice. The facts of this case and some of the comments in his e-mail indicate otherwise. Attorney Ryan made uninvited solicitations for legal work to a family clearly experiencing emotional turmoil

and then argued that he should keep a $10,000 payment from that family when he had performed very little work. His e-mail further acknowledged that in the past he had, at least to some extent, left his clients in the dark about financial matters because he had been embarrassed to discuss those issues. He gave the impression that he had begun using written fee agreements in order to safeguard himself from clients who become dissatisfied by an adverse result. While complying with this court's rules regarding fee agreements and the business side of the practice of law will have the added benefit of making it easier for attorneys to resolve fee-related disputes, one of the primary purposes of those disciplinary rules is to protect clients and prospective clients, many of whom are not sophisticated about financial matters and are in a vulnerable state when seeking legal representation. Since Attorney Ryan's e-mail indicates that he does not fully appreciate or comprehend this fact, we conclude that some supervision of the financial aspect of his practice is appropriate. We modify the wording of the referee's recommendation, however, to clarify the OLR's and Attorney Ryan's responsibilities.

¶ 31. We also note that, although not in effect at the time of Attorney Ryan's conduct in this case, the current version of SCR 20:1.5 requires that, except for representations where it is reasonably foreseeable that the total cost of the representation will not exceed $1,000 and except for situations where the attorney will charge a regularly represented client on the same basis or rate as in the past, the scope of the representation and the basis or rate of the attorney's fee and expenses for which the client will be responsible must be communicated to the client *in writing* either before or within a reasonable time after commencing the repre-

sentation. SCR 20:1.5(b)(1).[9] Moreover, where the total cost of the representation is more than $1,000, a lawyer must also communicate *in writing* to the client the purpose and effect of any retainer or advance fee that is paid to the lawyer. SCR 20:1.5(b)(2).[10] Solely oral fee agreements are therefore no longer an option in most circumstances. In addition, the rule and the comments thereto address a lawyer's obligations or suggested practices when there are subsequent changes in the basis or rate of the fee or expenses or when a fee estimate becomes substantially inaccurate. The reader should consult the rule and the comments thereto for specific information. It is sufficient in this context to note that the failure to provide adequate written fee information, when required by the rule, constitutes misconduct and subjects an attorney to professional discipline.

¶ 32. Finally, we determine that Attorney Ryan should pay the full costs of this disciplinary hearing. We note that Attorney Ryan did not file any objection to the

---

[9] SCR 20:1.5(b)(1) (effective July 1, 2007) states:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

[10] SCR 20:1.5(b)(2) (effective July 1, 2007) provides, "If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing."

OLR's statement of costs. We conclude that the amount of those costs, $2,530.18 as of November 25, 2008, is reasonable.

¶ 33. IT IS ORDERED that Dennis J. Ryan is publicly reprimanded for his professional misconduct.

¶ 34. IT IS FURTHER ORDERED that within 60 days of the date of this order, Dennis J. Ryan shall provide to G.S. a detailed billing of the legal work performed on behalf of G.S.

¶ 35. IT IS FURTHER ORDERED that for a period of two years from the date of this order, Dennis J. Ryan shall provide promptly to the Office of Lawyer Regulation, upon request, any and all fee agreements, trust account records, billing records, written or electronic communications with clients or prospective clients regarding fees or costs, and related materials.

¶ 36. IT IS FURTHER ORDERED that, to the extent he has not already done so, Dennis J. Ryan shall pay restitution to M.H.'s father in the amount of $8,000 by July 1, 2009. If restitution to M.H.'s father is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of Dennis J. Ryan to practice law in Wisconsin shall be suspended until further order of this court.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order, Dennis J. Ryan shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Dennis J. Ryan to practice law in Wisconsin shall be suspended until further order of the court.

¶ 38.  IT IS FURTHER ORDERED that restitution to M.H.'s father is to be completed prior to paying costs to the Office of Lawyer Regulation.